## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DANIEL PADILLA, individually and on behalf of all others similarly situated, <br><br>       Plaintiff, <br><br>   v. <br><br> DOMINO'S PIZZA, INC. and CONVERSENOW TECHNOLOGIES, INC., <br><br><br>       Defendants. | Civil Action No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Daniel Padilla ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Defendants Domino's Pizza, Inc. ("Domino's") and ConverseNow Technologies, Inc. ("ConverseNow") (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    This is a putative class action against Defendants arising from Domino's aiding, agreeing with, employing, procuring, or otherwise enabling the

wiretapping by ConverseNow of California customers' calls to Domino's restaurants in real time.

2.      Specifically, when customers call Domino's restaurants in California, an automated system records, takes, and routes customers' orders. However, unbeknownst to customers, their communications are routed through the servers of ConverseNow to, among other things, assist Domino's with fulfilling orders and upselling its customers, and to improve the capabilities of ConverseNow's own technology.

3.      The nature of Defendants' licensing agreements with each other are such that Domino's "aids, agrees with, employs, or conspires" to permit Defendant ConverseNow to read, attempt to read, learn, and/or use the communications of Domino's customers without prior consent, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a).

4.      Plaintiff brings this action on behalf of all persons in California whose communications were intercepted and recorded by ConverseNow. Plaintiff also brings this action on behalf of a subclass of all persons in California who called Domino's, and whose communications were intercepted and recorded by ConverseNow.

## PARTIES

5.      Plaintiff Daniel Padilla is a citizen of California residing in Delano,

2

California. On August 30, 2024, Plaintiff Padilla placed an order for delivery pizza with the Domino's Pizza store located in Delano, California. Upon calling the number Domino's lists for that location, (661) 725-0770, an automated voice answered saying "Thank you for calling Domino's. How can I help you today?" Plaintiff Padilla proceeded to place his order with Domino's, which unbeknownst to him, was being wiretapped by Defendant ConverseNow.

6.      The automated voice Plaintiff Padilla spoke to was that of ConverseNow's Voice AI technology enabled by Domino's to process Plaintiff's order. ConverseNow wiretapped Plaintiff's conversation with Domino's. Plaintiff was not on notice of any wiretapping when he called Domino's, nor did he provide prior consent to the same.

7.      Defendant Domino's Pizza, Inc. is incorporated in Delaware and maintains its principal place of business in Michigan. Domino's owns, operates, oversees, and controls the "Domino's" brand of pizza restaurants. Domino's is the largest pizza company in the world, with approximately $18 billion in global retail sales in 2023 – 49% of which were generated in the United States.

8.      Defendant ConverseNow Technologies, Inc. is a Delaware corporation with its principal place of business in Austin, Texas. ConverseNow "proudly operate[s] in more stores than any other restaurant voice AI company" and "processes millions of live conversations each month."

3

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of costs and interest, and Plaintiff, as well as members of the proposed class, are citizens of states different from Defendants.

10.     This Court has personal jurisdiction over Defendant Domino's because Domino's conducts substantial business in the State of Michigan and is headquartered in Michigan.

11.     This Court has personal jurisdiction over Defendant ConverseNow because ConverseNow conducts substantial business in the State of Michigan, including with Defendant Domino's, which gives rise to this action.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Domino's resides in this District, both Defendants do substantial business in this District, and entered into contract in this District.

**FACTUAL ALLEGATIONS**

**ConverseNow Technology**

13.     ConverseNow Technologies, Inc. is a Software as a Service (SaaS) company that is "shaping the future of restaurants" by "powering [its] best-in-class voice AI technology . . . for the restaurant industry and customer service, with a

4

mission to take artificial intelligence to the next level."[1]

14.     ConverseNow's website touts it is in over 1,250 stores in 43 states across the country and has processed over 24 million conversations.[2]

15.     ConverseNow explains:

> Voice AI, or conversational AI, is the newest generation of artificial intelligence for restaurants – a huge step up from the frustrating interactions we've all had in the past when talking to automated phone systems. Introduced to guests as virtual ordering assistants, voice AI engages in limitless conversations at once: each with the personable, tailored approach that people expect when speaking to a team member.[3]

16.     ConverseNow advertises its voice AI technology in a three-step process. First, "guests enjoy a natural conversation with a virtual assistant as they would with a typical team member." Next, "the order is sent into the cloud for your POS to process automatically." Lastly, "team members prepare and serve food as they would with any other order that comes in."[4]

---

[1] ConverseNow, About Us https://conversenow.ai/company/ (last accessed Oct. 1, 2024).
[2] *Id.*
[3] ConverseNow, Homepage https://conversenow.ai/ (last accessed Oct. 1, 2024).
[4] ConverseNow, Technology https://conversenow.ai/technology/ (last accessed Oct. 1, 2024).



17.    Critically, ConverseNow agents are listening in on the calls:

> For restaurants getting started with voice AI, our agent-supported system also helps train your virtual assistants even faster. Agents put the finishing touches on complex orders when necessary, teaching the virtual assistant in the process so the AI can complete that type of order the next time around. In both cases, the order is processed to guests' satisfaction without your staff getting involved.[5]

18.    In fact, ConverseNow "technology keeps a person behind the scenes in every conversation."[6]

19.    Not only do ConverseNow's clients benefit from its technology, once ConverseNow intercepts the customer communications, it has the ability to use such communications for its own purposes, as it explains, "by processing millions of live conversations each month, our self-learning system evolves even faster every day to

---

[5] *Id*.
[6] *Id*.

improve the guest experience for new and existing partners alike."[7]

20.    To do so, "Voice AI uses natural language processing (NLP), natural language understanding (NLU) and machine learning algorithms to interpret and respond to speech, and to learn from these user interactions." This creates "a feedback loop where the voice AI platform continuously refines the underlying algorithms."[8]

21.    Further, "voice AI assistants aren't merely executing simple, scripted actions. **Virtual assistants are dynamic conversationalists that recognize context clues, read between the lines and refine their algorithms with each order**. This means the ordering assistants learn to recommend relevant order suggestions and upsells based on prior guest orders. **Virtual ordering assistants record multiple guest orders** simultaneously across all ordering channels, so guests can enjoy the dining experience they're looking for even if the restaurant is otherwise short on physical staff."[9]

22.    Continued sales of the ConverseNow technology and service are based on ConverseNow's ability to improve its software capabilities and reduce the need

---

[7] *Id*.

[8] "Conversational AI vs. Legacy Phone Systems: How Voice AI Prevails" https://conversenow.ai/resources/conversational-ai-vs-legacy-phone-systems/ (last accessed Oct. 1, 2024).

[9] "6 Franchise Trends that Restaurant Operators Need To Know" https://conversenow.ai/resources/franchise-trends/ (last accessed Oct. 1, 2024) (emphasis added).

to employ its off-site agents to monitor and correct orders.

23.    Information from communications, like Plaintiff's, is central to ConverseNow's ability to successfully market its technology to future clients.

24.    The appeal to restaurant operators is apparent, as ConverseNow states:

> Missed calls, long wait times and inaccurate orders cost restaurants money and reputation. A restaurant that uses voice AI won't suffer these issues since **voice AI assistants automatically answer every call that comes in and accurately records guest orders in real-time**. Conversational AI also improves order fulfillment speed and increases total ticket sales from phone orders. Additionally, operators can reassign team members to food preparation or other tasks, leading to greater productivity.
>
> ---
>
> Restaurant virtual ordering assistants effortlessly receive and record orders, nearly doubling peak-hour volume while giving guests personalized and friendly service.[10]

25.    ConverseNow further explains, "once up and running, orders taken by our virtual assistants will show up on your POS in the same way as any other order. Staff simply fulfill orders as usual, with no changes in operations other than never having to answer the phone or worry about drive-thru."[11]

26.    In sum, ConverseNow has the capability to use caller communications to (i) improve its own products and services; (ii) develop new ConverseNow

---

[10] *Id.* (emphasis added).
[11] ConverseNow, Technology https://conversenow.ai/technology/ (last accessed Oct. 1, 2024).

products and services; and (iii) analyze customers' communications to assist with avoiding the intervention of restaurant staff in the order process.

**Domino's Integration of ConverseNow Technology**

27.     ConverseNow's voice AI technology is currently used in over 120 of Defendant Domino's stores nationwide, including in California.[12] The technology utilized is "custom-tailored for Domino's with quick and easy setup."[13]

## Custom-tailored for Domino's with quick and easy setup

- Thoroughly trained in the Domino's menu with custom upsell
- Seamless cloud-based order processing that goes straight to Pulse
- Customizable for local promotions and coupons
- Quick, 3-step onboarding process gets you up and running in no time
- No staff training needed
- Direct integrations with Wizardline and your phone system

28.     Domino's Pulse, referenced above, is a custom software system that

---

[12] ConverseNow, Info https://info.conversenow.ai/dfa-2 (last accessed Oct. 1, 2024).
[13] *Id.*

helps Domino's Pizza manage in-restaurant operations and point-of-sale functions. Similarly, Domino's Wizardline is a data software that assists with payroll, pay cards, AI Ordering, hiring & retention, and more.[14]

29.    As one Domino's store owner explained, "It was the flip of a switch. I didn't have to do anything. They routed everything through our existing phone stem. We went live with all four stores in one day and boom, it was done."[15]

30.    When a customer calls a Domino's pizza store, a virtual assistant on behalf of ConverseNow asks the caller how they can be of assistance. When a customer states they would like to place an order, the virtual assistant responds, "let me transfer you to the order line."

31.    Within seconds, a virtual assistant introduces themselves using their "name" stating they are an employee of the store location the customer is calling and asks the customer what they would like to order today. Upon stating their order, the virtual assistant then asks the customer if they would like anything extra, including desserts. Once the customer indicates that is their complete order, the voice confirms the order with them.

32.    Next, the virtual assistant asks the customer to provide their delivery address. After confirming the address, the voice prompts the customer for their credit

---

[14] Wizardline Reporting https://us.thewizardline.com/about-us/ (last accessed Oct. 1, 2024).
[15] *Id.*

card information.

33.    During the duration of the call, the customer is never informed that ConverseNow is a party to the conversation.

34.    ConverseNow's Voice AI is designed in such a way that customers believe they are only interacting solely with Domino's when they are placing their order. Customers are not notified prior to placing their order that their communications with Domino's restaurants are being intercepted, recorded, and used by any third party.

**Defendant Domino's Aided, Agreed With, Employed, Procured, or Otherwise Enables ConverseNow's Wiretapping of Plaintiff's Communications**

35.    As described above, Defendant ConverseNow collects the communications of callers to Defendant Domino's stores.

36.    Domino's, aided, employed, procured, or otherwise enabled ConverseNow to implement its Voice AI technology into Domino's restaurants by contracting with ConverseNow.

37.    The purpose of the invasion of privacy, as set forth above, is straightforward: ConverseNow collects the communications in real time in order to send to Domino's.

38.    This is valuable to Domino's because it saves Domino's money on the cost of labor and ensures all orders are taken and no customer is left unanswered

when calling.

39.     In addition to helping companies like Domino's process their phone orders, ConverseNow aggregates this information with the information collected from all of its clients employing ConverseNow Voice AI at their businesses to improve the functionality of the technology, which increases the value of ConverseNow's services when they are offered to other companies.

40.     Thus, the contractual agreement between Domino's and ConverseNow to wiretap Plaintiff's and Class Members' communications is done for the purpose of increasing profitability and efficiency, and by extension, the profits of both Defendants.

## CLASS ALLEGATIONS

41.     Plaintiff seeks to represent a class defined as all California residents who had the contents of their conversations intercepted and recorded by ConverseNow using its Voice AI technology during the statute of limitations period (the "Class").

42.     Plaintiff also seeks to represent a subclass defined as all California residents who had the contents of their conversations with Domino's intercepted and recorded by ConverseNow using its Voice AI technology during the statute of limitations period (the "Subclass").

43.     The Class and Subclass shall be collectively referred to as the

"Classes."

44. Excluded from the Classes are: (i) Defendants and their officers, directors, employees, principals, affiliated entities, controlling entities, and other affiliates; (ii) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (iii) the Judge(s) assigned to this case and any members of their immediate families.

45. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the hundreds of thousands. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

46. There is a well-defined community of interest in the common questions of law and fact affecting members of the Classes. Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Common legal and factual questions include, but are not limited to, whether Defendants have violated the CIPA and whether members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

47. The claims of Plaintiff are typical of the claims of the Class because the

Plaintiff, like all other Class members, called a business using ConverseNow Voice AI technology and had the contents of his communications intercepted and disclosed to ConverseNow.

48. The claims of Plaintiff are typical of the claims of the Subclass because Plaintiff, like all other Subclass members, called Defendant's Domino's stores and had the contents of his communications intercepted and disclosed to ConverseNow.

49. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

50. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

51.     Finally, Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I
### Violation of The California Invasion of Privacy Acy,
### Cal. Penal Code § 631

52.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

53.     Plaintiff brings this claim against Defendant Domino's and Defendant ConverseNow individually and on behalf of the Subclass, and he brings this claim solely against ConverseNow on behalf of the Class.

54.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically,

acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

55.   CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, Section 631(a) applies to Internet

communications").

56.     ConverseNow is a "separate legal entity that offer[] [a] 'software-as-a-service' and not merely [] passive device[s]." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, ConverseNow had the capability to use the wiretapped information for its own purposes. Accordingly, ConverseNow was an unbeknownst third party to any communication between Plaintiff and Class Members on the one hand, and Defendant Domino's, on the other. *Id*. at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

57.     At all relevant times, by using its Voice AI technology, ConverseNow willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Class Members, on the one hand, and other businesses utilizing ConverseNow on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

58.     At all relevant times, by using its Voice AI technology, ConverseNow willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Subclass Members, on the one hand, and Defendant, Domino's on the other, while the electronic

communications were in transit or were being sent from or received at any place within California.

59.    At all relevant times, ConverseNow used or attempted to use the communications intercepted by its Voice AI technology to improve its products and services and generate revenue for itself and its clients.

60.    At all relevant times, Defendant Domino's aided, agreed with, employed, or otherwise enabled ConverseNow to wiretap the communications of Subclass Members using its AI Voice technology and to accomplish the wrongful conduct at issue here without Plaintiff's and Subclass Members' prior consent.

61.    Plaintiff and Class Members did not provide their prior consent to Defendant ConverseNow's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Class Members' communications.

62.    Nor did Plaintiff and Subclass Members provide their prior consent to Defendant Domino's aiding, agreeing with, employing, or otherwise enabling ConverseNow's conduct.

63.    The wiretapping of Plaintiff and Class Members occurred in California, where Plaintiff and Class Members called a Domino's pizza location, or other business utilizing ConverseNow, and where ConverseNow, as enabled by Domino's or another business utilizing ConverseNow, routed Plaintiff's and Class Members' communications to ConverseNow's servers.

64.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendants' violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendants' violations of CIPA § 631(a).

**COUNT II**
**Violation of The California Invasion of Privacy Acy,**
**Cal. Penal Code § 632**

65.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

66.    Plaintiff brings this claim against Defendant ConverseNow individually and on behalf of the Classes.

67.    California Penal Code § 632 prohibits an entity from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

68.    At all times, ConverseNow intentionally used its Voice AI technology to eavesdrop on the confidential telephone communications between Plaintiff and Class Members, on the one hand, and Domino's or other businesses utilizing ConverseNow technology, on the other.

69.    When communicating with Domino's or other business utilizing ConverseNow technology, Plaintiff and Class Members had an objectively

reasonable expectation of privacy. Plaintiff and Class Members did not reasonably expect that anyone other than the business they were calling would be on the other end of the confidential communications, nor that a third party entity like ConverseNow would be eavesdropping on and recording the confidential communications. Indeed, customers calling Domino's and other businesses utilizing ConverseNow technology disclose their name, address, and credit card information, which enhances their reasonable expectation of privacy because such sensitive information should not be disclosed to, nor intercepted by, third parties like ConverseNow.

70.    Plaintiff and Class Members did not provide their prior consent to ConverseNow's intentional access, interception, reading, learning, recording, and collection of Plaintiff's and Class Members' telephone communications.

71.    The wiretapping of Plaintiff and Class Members occurred in California, where Plaintiff and Class Members called a business utilizing ConverseNow technology and where ConverseNow, as enabled by that business, routed Plaintiff's and Class Members' communications to ConverseNow's servers.

72.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant ConverseNow's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of ConverseNow's violations of CIPA § 632(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.     For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel;

b.     For an order declaring Defendants' conduct violates the law referenced herein;

c.     For an order finding in favor of Plaintiff and the Class and Subclass on the counts asserted herein;

d.     For prejudgment interest on all amounts awarded;

e.     For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury; and

f.     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 24, 2024

Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiff's Attorneys
E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone:  (248) 841-2200

21

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Alec M. Leslie
aleslie@bursor.com
Caroline C. Donovan*
cdonovan@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150

*Admission Forthcoming*